NORTHERN SAVINGS BANK, a Corporation, v. JOS. M. KELLY and the Courier-Forum Publishing Company Jos. M. Kelly.

(154 N. W. 650.)

Suit upon promissory note. Defense, failure of consideration, wrongful transfer of said note, and entire lack of consideration. Certain rulings of the trial court assigned as error.

**Promissory note — indorsement — by president of company — suit on — proof of indorsement — ownership — possession — pleadings.**

1. The proof of indorsement made by the president of the defunct Courier-Forum Publishing Company together with the admissions of the answer and the possession of the note by plaintiff, made a prima facie showing of indorsement and ownership.

Agreement — between defendant and payee — note not to be considered valid — except upon contingency — wrongful transfer of note — consideration for note — failure of — rulings of court — error — defense to note — purchaser in due course.

2. It was error in the trial court to reject the offer of the defendant to show an agreement with the Courier-Forum Publishing Company to the effect that said note would not be valid unless a consolidation of the Courier-News and Forum was effected. This evidence was competent to show a defense in the hands of the original holder of the note sufficient to put the plaintiff on proof as an innocent purchaser in due course.

President of company — cross-examination — books — custody of — stock of corporation — subscriptions to — failure to secure — consideration for note.

3. It was error in the trial court to restrict the cross-examination of the president of the defunct Courier-Forum Publishing Company when called by the defendant under the statute. Such testimony was competent to show custody of the books of said defunct corporation and for the purpose of showing any knowledge that the witness may have had of the subscriptions to the stock of said corporation. Defendant was given a certain written instrument wherein it was agreed that the note should be invalid unless certain Democrats were to subscribe $15,000 to such corporate stock, or the defendant's note should be invalid. Defendant should have been allowed to prove the failure to secure those subscriptions.

Plaintiff corporation — president of — cross-examination — defense to note — knowledge of president — purchaser.

4. It was also error in the trial court to exclude questions asked of the president of the plaintiff tending to show that at the time of the purchase of the note he knew of the defense outlined in the answer.

Opinion filed October 13, 1915.

Appeal from the District Court of Cass County; *Pollock,* J. Reversed.

*Flynn & Traynor,* for appellant.

There was no proof of the indorsement of the note involved in this case. The mere making of the indorsement by the so-called president of the payee is no proof at all. There was no proof that he was president, or that he had authority to make the indorsement, by which, coupled with a so-called delivery, the said note was transferred. There are no presumptions in favor of either of these acts. 3 Enc. Ev. 625.

If Hatcher were president, there is no presumption that he had authority to indorse and transfer the note. 1 Dan. Neg. Inst. §§ 388, 394; Bank of United States v. Dandridge, 12 Wheat. 70, 6 L. ed. 555; Stoddard v. Lyon, 18 S. D. 207, 99 N. W. 1116.

The mere possession of a promissory note, transferred by indorsement, does not avoid the necessity of proving the indorsement. Rev. Codes 1905, §§ 6361, 6493, Comp. Laws 1913, §§ 6944, 7075; Smith v. Courant Co. 23 N. D. 297, 137 N. W. 781; Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; Massachusetts Loan & T. Co. v. Twichell, 7 N. D. 440, 75 N. W. 786; Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614.

If a negotiable instrument is transferred without indorsement, the transferee takes it subject to all the defenses that might be urged against it in the hands of the payee. Rev. Codes 1905, § 6351, Comp. Laws 1913, § 6934; Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; Massachusetts Loan & T. Co. v. Twichell, 7 N. D. 440, 75 N. W. 786.

In construing a pleading to determine its effect, its allegations shall be liberally construed with a view of substantial justice between the parties. Rev. Codes 1905, §§ 6357, 6869, Comp. Laws 1913, §§ 6940, 7458; Walters v. Rock, 18 N. D. 45, 115 N. W. 511; Waldner v. Bowden State Bank, 13 N. D. 604, 102 N. W. 169, 3 Ann. Cas. 847.

The defendant had the right to show all the facts, conditions, and circumstances under which the note was signed and delivered, as well as those pertaining to its negotiation and transfer, so as to show fraud in both instances. This being accomplished, the burden of proof then shifted to plaintiff, to show that it purchased the note in good faith, in due course, and without notice of defects. Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867; Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Walters v. Rock, 18 N. D. 52, 115 N. W. 511; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; Citizens' State Bank v. Garceau, 22 N. D. 576, 134 N. W. 882; Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550; Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081.

This is not a case of varying a writing, but of vitiating it. Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93; Rev. Codes 1905, §§ 5351, 5352, Comp. Laws 1913, §§ 5907, 5908.

Parol proof of the conditions, agreements, and circumstances surrounding the making and delivery of a note is competent. Burke v. Dulaney, 153 U. S. 228, 38 L. ed. 698, 14 Sup. Ct. Rep. 816; Rev. Codes 1905, § 5346, Comp. Laws 1913, § 5902; First Nat. Bank v. Flath, 10 N. D. 281, 86 N. W. 867; Citizens' State Bank v. Garceau, 22 N. D. 576, 134 N. W. 882; 6 Enc. Ev. 16; Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; 20 Cyc. 112; Rochford v. Barrett, 22 S. D. 83, 115 N. W. 522; Kirby v. Berguin, 15 S. D. 444, 90 N. W. 857; Red River Valley Nat. Bank v. Barnes, 8 N. D. 432, 79 N. W. 880; Prairie School Twp. v. Haseleu, 3 N. D. 340, 55 N. W. 938; Juilliard v. Chaffee, 92 N. Y. 535; Skaaraas v. Finnegan, 31 Minn. 48, 16 N. W. 457; Grand Forks Lumber & Coal Co. v. Tourtelot, 7 N. D. 587, 75 N. W. 901.

A director of a corporation, and the one in whose sole charge all of the files and records had been for a long time, is competent to testify as to who were subscribers to the stock of the corporation, and especially whether or not certain subscriptions to stock had been made. 3 Enc. Ev. 617; Jones, Ev. § 212.

*Arthur W. Fowler,* for respondent.

Evidence of the president of a corporation that he made the indorsement of the note in suit in the name of the corporation is sufficient proof of an indorsement. But, in this case, the answer admits the indorsement. Coffin v. Smith, 26 S. D. 536, 128 N. W. 805; Farmers' Bank v. Riedlinger, 27 N. D. 318, 146 N. W. 556.

Defendant is estopped to deny that Hatcher was president, or to deny his authority to indorse. Rev. Codes 1905, §§ 6324, 6362, Comp. Laws 1913, §§ 6907, 6945; Grover v. Muralt, 23 N. D. 576, 137 N. W. 830; Bank of United States v. Dandridge, 12 Wheat. 64, 6 L. ed. 552; National Folding Box & Paper Co. v. American Paper Pail & Box Co. 55 Fed. 488.

Persons acting publicly as officers of a corporation will be presumed rightfully in office, so far as regards other persons. Hall v. Carey, 5 Ga. 239; Selma & T. R. Co. v. Tipton, 5 Ala. 787, 39 Am. Dec. 344; Narragansett Bank v. Atlantic Silk Co. 3 Met. 282; Hilliard v. Goold, 34 N. H. 230, 66 Am. Dec. 765; Rev. Codes 1905, §§ 6336, 6347, 6361, Comp. Laws 1913, §§ 6919, 7030, 7043; Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Farmers' Bank v. Riedlinger, 27

N. D. 318, 146 N. W. 556; Shepard v. Hanson, 9 N. D. 251, 83 N. W. 20; Dan. Neg. Inst. § 812; Drinkall v. Movius State Bank, 11 N. D. 10, 57 L.R.A. 341, 95 Am. St. Rep. 693, 88 N. W. 724.

Prima facie every holder of a negotiable instrument is deemed a holder in due course, both under the law merchant and the statutes of this state. Rev. Codes 1899, § 59, chap. 100, Civ. Code; 2 Randolph, Com. Paper, § 730; Million v. Ohnsorg, 10 Mo. App. 432; 8 Cyc. 227, 233; Rev. Codes 1905, § 6336, Comp. Laws 1913, § 6919; Grover v. Muralt, 23 N. D. 576, 137 N. W. 830; Ravicz v. Nichells, 9 N. D. 536, 84 N. W. 353.

The mere allegation of fraud in the exception of the note throws no burden upon the plaintiff. Vickery v. Burton, 6 N. D. 245, 69 N. W. 193, and cases cited; State ex rel. Dorgan v. Fisk, 15 N. D. 224, 107 N. W. 191; Palmer v. Smedley, 18 How. Pr. 321; Sayer v. Harker, 113 Iowa, 584, 85 N. W. 786; Smith v. Parker, 148 Ind. 127, 45 N. E. 770; Cerney v. Paxton & G. Co. 78 Neb. 134, 10 L.R.A.(N.S.) 640, 110 N. W. 882; Maclaren v. Kramar, 26 N. D. 244, 50 L.R.A.(N.S.) 714, 144 N. W. 90.

Parol evidence is not admissible to show that the subscription was made upon a condition not expressed in the instrument. 10 Cyc. 391, and cases; 3 Enc. Ev. 622, and cases; Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93; Johnson v. Kindred State Bank, 12 N. D. 336, 96 N. W. 588; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; Aden v. Daub, 146 N. C. 10, 59 S. E. 162; Crilly v. Gallice, 78 C. C. A. 525, 148 Fed. 835.

Counsel, after the rulings of the court to the effect that he was not using the best evidence, made no offer of proof to lay any foundation for secondary evidence, or to show that the witness was or could be testifying from his own knowledge. Madson v. Rutten, 16 N. D. 281, 13 L.R.A.(N.S.) 554, 113 N. W. 872; Bristol & S. Co. v. Skapple, 17 N. D. 272, 115 N. W. 841.

A party to an action who is in default cannot be called for cross-examination under the statute. There must have been issue joined. Suter v. Page, 64 Minn. 444, 67 N. W. 67.

BURKE, J. This litigation arises over a certain promissory note given by the defendant under the following circumstances: In the

spring of 1912 two daily papers were published at Fargo,—the Forum and the Courier-News. From the correspondence we infer that the Forum was Republican and that the Courier-News almost, if not quite, Democratic. From the same sources we infer that the parties to this action are of the Democratic faith. About the 8th of March, 1912, one O. M. Hatcher approached the defendant for a subscription to a new company to be known as the Courier-Forum Publishing Company which was to buy both of the aforesaid newspapers. Upon that date, Mr. Kelly subscribed for ten shares par value, $100 each, giving therefor his note in words and figures, as follows:

Fargo, North Dakota, March 8, 1912.

On December 1, 1912, for value received, I promise to pay to the order of the Courier-Forum Publishing Company one thousand and no /100 dollars ($1,000), with interest from date until paid at the rate of 7 per cent annum, payable annually. Principal and interest payable at payee's office at Fargo, North Dakota.

(Signed)  Joseph M. Kelly,
Devils Lake, North Dakota.
Postoffice.

At the time of the signing of the note, O. M. Hatcher gave to Mr. Kelly a writing in the following language:

March 8, 1912.

It is agreed that this subscription is conditional upon the securing of subscriptions from J. P. Lamb, John Bruegger, W. E. Purcell, S. J. Doyle, John Fried, George Duis, M. F. Murphy, John Cashal, F. A. Wilson, Frank Lish, or other prominent Democrats to the extent of not less than $15,000 to the preferred stock of the Courier-Forum Publishing Company of Fargo.

(Signed)  O. M. Hatcher
for Courier-Forum Publishing Company.

March 20, 1912, George Hollister wrote a letter upon the stationery of the Northern Trust Company to the following effect:

Fargo, North Dakota, Mar. 20, 1912.

Joseph M. Kelly, Esq.,
    Devils Lake, N. D.

Dear Sir:—

We have to-day bought your note of $1,000, given to the Courier-Forum Publishing Company. We would prefer to have this note upon one of our blanks for reasons that I will explain to you the next time I see you. I inclose you such blank and ask that you sign the same and return to us, on receipt of which the note given the newspaper will be canceled and mailed to you.

I have just returned from a six weeks' vacation—got home in time to vote yesterday—but I solemnly swear that I did not vote for La Follette.

Yours truly,
(Signed) George Hollister
President.

Under date of March 21, 1912, Mr. Kelly replied as follows:

Mr. G. H. Hollister, President,
        Northern Trust Company,
            Fargo, North Dakota.

Dear Sir:—

Your letter of March 20th advising of the purchase of my note, received. When I gave the note to Hatcher, it was with the express and written conditions that he had to sell to fifteen other fellows mentioned an equal amount of the stock, or it would not be payable. So, until that is complied with, I do not think the note is much good to you or Hatcher except to show to the others in order to induce them to subscribe.

I am always willing to subscribe my share to support the cause and am doing so here to support our own paper, and I told Hatcher that I would not put in a cent unless the Democrats outside of Fargo, who have a local interest, would come through, and he assured me he could get them if I would sign the note, so I did so, taking from him an agreement to that effect.

From the way our Democrats voted for La Follette it looked as though they were all tending towards socialism.

Yours truly,

(Signed) Joseph M. Kelly.

At the trial below, plaintiff called M. N. Hatcher and asked the following question:

Q. Witness show plaintiff's exhibit B. I call your attention to the indorsement on the back of this paper: "The Courier-Forum Publishing Company, by M. N. Hatcher, President," and ask you if you know who made that indorsement.

A. I did, sir.

The note was then offered in evidence, and plaintiff rested. Defendant thereupon moved for judgment for dismissal of the action, which was denied. The complaint, besides the ordinary allegations, reads: "Before the maturity of said note, the said Courier-Forum Publishing Company for good and valuable consideration by its indorsement in writing upon the back of said note, duly indorse, transfer, and deliver said note to this plaintiff. . . ."

The answer, in addition to the general denial and a denial of the corporate existence of the Courier-Forum Publishing Company, contains the following allegations:

"4. Admits that on or about the 8th day of March, 1912, the defendant, Joseph M. Kelly, executed the promissory note mentioned in plaintiff's complaint, but alleges that there was absolutely no consideration for the giving of said note, and that the same was obtained by one Hatcher on conditions hereinafter stated, of which the plaintiff had full knowledge at the time of the alleged transfer of said note to plaintiff."

Then follow allegations of the false representations already mentioned. The answer contains the following:

"7. Specifically denied that the said note was ever, for good and valuable consideration or for any consideration at all, duly indorsed, transferred, and delivered by the said Courier-Forum Publishing Company to the plaintiff herein, and alleges that the said note was delivered to the Northern Trust Company of Fargo by the said Hatcher,

and by the said Northern Trust Company delivered to this plaintiff. 8. That at all times before the delivery of said note to the Northern Trust Company and to the plaintiff, the said Northern Trust Company and the said plaintiff had sufficient knowledge of the facts hereinbefore set forth to put them on inquiry, and they were, in fact, informed before delivery to the plaintiff of the facts with reference to the giving of said note, and took the same with full knowledge of the facts."

It appears that Mr. Hollister was also the president of the Northern Savings Bank, this plaintiff, at the time of the purchase of the note.

1. The first controversy arises over defendant's contention that the indorsement has not been proved. As stated above, M. N. Hatcher, president of the defunct corporation, was called as a witness and made the plain statement that he had written the indorsement (waiving demand and notice protest—Courier-Forum Publishing Company, by M. N. Hatcher, President) on the back of said note. At the trial below defendant's attorney said:

"The point is, if your Honor please, that there is no proof of any authority to indorse here. All proof, so far, is just simply that Mr. Hatcher wrote that on the back of it."

Appellant insists that there is no proof of indorsement by the Courier-Forum Publishing Company. We do not think the point well taken. Section 6919, Comp. Laws 1913, provides: ". . . . An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer and may be negotiated by delivery." Section 6930 reads: "Except where an indorsement bears date after the maturity of the instrument, every negotiation is deemed prima facie to have been effected, before the instrument was overdue." Section 6944, Comp. Laws 1913, provides: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course. . . ." See: Kerr v. Anderson, 16 N. D. 36, 111 N. W. 614; Farmers' Bank v. Riedlinger, 27 N. D. 318, 146 N. W. 556.

Taken in connection with the defendant's answer, we think the presumptions quite sufficient to make a prima facie case for the plain-

tiff, carrying him to the point where defendant is able to show a defense to the note itself. Of course, when such a stage was reached, and defendant had shown that in the hands of the original payee, said note was unenforceable, the burden would shift, and plaintiff must then show himself a good-faith purchaser without notice, etc.

2. This brings us logically to the efforts made by the defendant to show fraud in the taking and transfer of the note. The defendant Kelly, upon his own behalf, testified that in addition to the written agreement given to him by Hatcher, there was an oral agreement that said note should not be used or negotiated for any purpose unless the consolidation of the Courier-News and the Fargo Forum was effected, and, before the said note should be negotiated or used for any purpose, that sufficient subscriptions should be obtained to effect said consolidation, to wit the sum of $50,000, and that the defendant would be consulted about the consolidation so that he could be assured that everything was all right. That no notification was ever given him to go to Fargo to pass upon such consolidation. This offer of proof was rejected by the trial court upon the theory apparently that it was not consistent with the allegation of defendant's answer. Respondent adds further grounds for its rejection, that the proof, if admitted, would show no fraud in the inception of the note, but merely in its wrongful delivery. We believe that the evidence was admissible. The answer is broad enough to admit the proof offered, and we think the evidence tended, in some measure at least, to show fraud in the inception of the note. It must be borne in mind that at this stage of the trial, defendant was merely showing a defense against the original payee of the note, and it could not seriously be contended that this defense would be shut out in an action between the original parties. As there must be a new trial, we express this opinion, although we consider the matter less prejudicial than those treated in the next paragraph.

3. The next controversy arises over the effort of the defendant to show that the Democrats named, or others, had not subscribed $15,000 worth of the stock. M. N. Hatcher, the man who had made the indorsement upon the back of the note, as president of the Courier-Forum Publishing Company, was called for cross-examination, and over the plaintiff's objection was allowed to testify. As plaintiff has not ap-

pealed, we will not consider its contention that this testimony was improperly admitted. Mr. Hatcher was one of the organizers of the Courier-Forum Publishing Company, its president, had signed the articles of incorporation, was one of the directors, had never resigned from such position, and was such director at the time of the trial. He was asked whether or not the Democrats named—Lamb and others —had subscribed to the Courier-Forum Publishing Company to the amount of $15,000, and to aid his recollection there were placed in his hands the books of the company. He was not allowed to answer upon the grounds that the books themselves were the best evidence. He was then specifically asked:

Q. Well, you know as a matter of fact, do you not, that there never was any subscription obtained from J. P. Lamb?

(Objected to for the same reasons. No foundations for this proof, secretary of this company is not here.)

The Court: Objection sustained.

Q. . . . You, as well as your brother, was the man engaged in the endeavor to consolidate the Courier-News and the Fargo Forum?

(Objected to for the same reason and for the futher reason concerning the offer of parol proof under this contract.)    Sustained.

Q. Well, is the list of subscribers whose names are mentioned in the stubs of this certificate book that is handed you, is that a complete list of the subscribers to the stock?"

(Objected to as calling for a conclusion, and not the best evidence.) Sustained.

And again:

Q. Have you in your possession all of the subscription slips such as the one they claim that Mr. Kelly signed; that is, exhibit C? You have in your possession, have you not, all of such subscriptions as were ever filed with the Courier-Forum Publishing Company?

(Objected to for the reason that this is not the officer that would know whether they were filed or not. It is not the best evidence because the files were the best evidence.)

Sustained.

Again he was asked:

Q. Well, as a matter of fact, this is the stock certificate book, in which is contained all the records with reference to the issuance of stock certificates of the Courier-Forum Publishing Company?
(Same objection.)
Objection sustained.
Q. Well, you know, do you not, that this is the only certificate book that you have in your possession?
A. It is all I have; yes, sir.
Q. You never heard or saw any other subscription book for the Courier-Forum Publishing Company?
A. No, sir.
Q. You never saw or heard of any certificate of stock above number forty-seven in that corporation?
A. No, sir.
Q. Now, as a matter of fact, Mr. Hatcher, you know, don't you, that there are no other stock certificates issued than those that are shown by this record to have been issued?
A. I don't know; no, sir.

And again:

Q. You don't know when these certificates of stock were issued?"
(Objected to as immaterial.)
Sustained.

And again:

Q. How long is it since he (O. M. Hatcher) was in the state?
A. He was in the state about the 1st of November, 1912.
Q. Now since that time you have had charge and are the only one who has had charge of the business of the Courier-Forum Publishing Company?
A. Well, I don't know that there has been any one particularly in charge.
Q. Well, so far as there has been anyone you have been that one?
A. I have consulted with Mr. Holt at his request, two or three times.
. . .

31 N. D.—38.

Q. Well, any mail that has come to the Courier-Forum Publishing Company since your brother left the state has been handled by you?

A. I have never got any mail.

Again:

Q. You are the man who wrote the indorsement on the back of the note in this case?

A. Yes, sir.

Again:

Q. I show you exhibit 3, and ask you if that is a list of the stock subscriptions as given by you to Mr. Holt?

A. I don't know. I can hardly answer that "Yes" or "No" because I did not give him any list.

Q. Well, what did you give him?

A. He had all of these down to here as I recollect, and I told him that the stock record book would show these files. . . . I told him that was the list as far as I knew.

Q. And that list contains the names of all that appear, from the records of the Courier-Forum Publishing Company, to have been subscribers to the stock?

(Objected to as not the best evidence.)

Sustained.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    -

Q. Well, you know, as a matter of fact that More Brothers, of Fargo, are already subscribers of the stock of the Courier-Forum Publishing Company?

(Objected to as immaterial and not the best evidence.)

Sustained.

Q. Well, do you know anything about it, Mr. Hatcher?

(Same objection.)

Sustained.

Defendant's attorney then stated to the court: "The question of fact is, who were subscribers,—he may know that. If he knows that of his own knowledge, he may testify to that. We are not attempting to show the conditions of the subscriptions. We are attempting to show merely who are subscribers.

"By the Court. If I understand this situation you are not entitled to this answer and I shall have to so rule.

And again:

Q. Mr. Hatcher, you have charge of all of the records of the Courier-Forum Publishing Company, since O. M. Hatcher left the state?

A. No, sir. I have not. I had charge of them since about—

Q. Well, you may say.

A. Since he left the state I have had charge. It was in August, 1912. I got what had not been taken. We moved from the office over there and took to my office.   .  .  .

Q. Well, those parts of the Courier-Forum Publishing Company's records you know to have been missing, were minutes of meetings?

A. Yes, we have minutes of our meetings, but some are still missing.

Q. But that is all you know of those records of the Courier-Forum Publishing Company that are missing?

A. I don't know of any others.

Q. And when you went there you found stock subscriptions?

A. I found a file; yes, sir.

Q. You found a file which contained stock subscriptions?

A. Contained some; yes, sir.

Q. Well, now just get your thinking cap on and see if you can recollect just what shape you found these stock subscriptions in. Whether you found them all together in one file.

(Objected to as immaterial. No foundation laid for this inquiry.) Sustained.

Q. This stock subscription book, exhibit 2, is the only subscription book that was in file on record at that time?

(Objected to as immaterial.) Sustained.

The stock certificate book, exhibit 2, offered in evidence. (Objected to as immaterial. For the further reason that there was no foundation laid or proof of the breach of the written contract offered in this case and that it is incompetent. Proves nothing.) Sustained.

There is much more of the rulings of the court of a similar nature which are challenged by defendant. We are forced to the conclu-

sion that the restriction placed upon the cross-examination of this witness by the court constituted prejudicial error. The defendant had a right to find out, if he could, from this witness, whether or not the prominent Democrats named, or others, had subscribed $15,000 towards the formation of the corporation. If the witness knew that those subscriptions had not been obtained, his testimony was competent and should have been received. Defendant, however, was not allowed to ascertain whether or not he had this knowledge, and the questions seeking to elicit this information from him, or at least to discover whether he had the knowledge, were improperly rejected. Furthermore, if this witness, as the testimony tends to show, was in charge of all of the books of the company, he could testify to their identity and allow the same to be offered in evidence. From the questions already given it will be seen that defendant was prevented from showing that the witness had the books in his custody, and was also prevented from introducing the books in evidence. It is difficult to see how the defendant, under the various rulings enumerated, could have proved the fact which was in his mind, to wit, that the leading Democrats of the state had not subscribed $15,000. For the errors enumerated a new trial must be ordered.

4. It follows that it was error to exclude questions like the following:

"Q. You told Mr. Hollister at the time that you turned over the note to him that it was taken for a subscription to the stock of the Courier-Forum Publishing Company, and that it was not to be used unless the Courier-Forum Publishing Company were formed—the consolidation took place of the two institutions?"

(Objected to.)

Sustained.

And it was also error to sustain objection to the following question asked of Mr. Hollister:

"Q. At the time you took this note, Mr. Hollister, you knew that it was given for a subscription to the stock of the Courier-Forum Publishing Company, did you not?"

(Objected to. No foundation laid. No breach of the written contract so far shown.)

Also the following question asked of the witness:

"Q. And at the time you took the note you knew that there had been a conditional agreement between Mr. Hatcher and Mr. Kelly?"

This, and other enumerated errors, however, are not likely to be repeated in another trial. The case is remanded for further proceedings in accordance with the views expressed herein.